Freeman, J.,
delivered tbe opinion of tbe court:
Tbe plaintiff alleges tbe delivery of nineteen hundred yards of linen to tbe defendant, as common carrier, to be safely carried from Chattanooga, Tenn., to Louisville-, Ky., and then delivered by defendant to L. Gr. Henry & Co-., on account .of plaintiff, and avers a failure so to deliver, and *287 damages as a consequence, to the amount of $2,000. The defendant pleaded not guilty, and gave notice that on the trial of the cause it would insist in defense that the grievance complained of resulted from an extraordinary rise in the Tennessee river.
The first question presented and urged by the defendant for reversal of the judgment, is the admission of testimony of one Ragsdale, the agent of the East Tennessee & Georgia Railroad Company, to the effect that cars could be transferred from defendant’s road to said East Tennessee & Georgia road, by means of the track and switches, and that there was a portion of the track of said last road that was not overflowed, near by, within the corporation of Chattanooga. He proved further, that a portion of this high track was not occupied at the time of the unprecedented flood which caused the damage complained of, but that said track was not tendered to the defendant, nor was its use requested by them. It is insisted this was within the principle of the case of David, decided at the September term, 1872, of this court. In that case it was held not error to exclude testimony showing that prudent business men in Chattanooga, upon the same height of ground as the railroad, lost goods by the flood. In other words, that the fact that other men lost goods, had no proper tendency to prove or disprove the question involved in the case as to whether the defendants “had used the precaution and vigilance which the law imposed on them under the circumstances.” This ruling was unquestionably correct, but we do not think the questions presented are the same. .In this case the effort was not to show that others lost or saved their goods in Chattanooga by the flood, but to show that the defendant, by the precaution of moving the threatened car on to another road, conveniently situated, might have saved the goods from damage by the flood. The question is, whether, in this view of the case, the evidence was admissible, and whether, if such was the fact, it was the duty of the com *288 pany to. so remove the car. It is insisted, by defendant that no such dntv was imposed; that this would have been to require an extraordinary amount of diligence on the part of the railroad, not imposed by law.
The case of Empire Transportaton Co. v. Wallace, 68 Penn. St., 202, is cited in support, of this view of the case. The rule is there correctly laid down by Judge Sharswood, in reference to tire duty of the carrier to transport the goods by the usual route, and within á reasonable time, when no time is specified in the contract. He adds: “Pie must use reasonable expedition, but is not bound to extraordinary exertions, or to incur expenses in. order to surmount obstacles not caused by bis own default, but by the weather or other act of Providence.” Redf. on Carriers, 210, 220. This was an action for failure to carry oil shipped from Pennsylvania to. Boston, by way of Philadelphia. The usual route was by water from the latter place, and defendants bad tbe option to ship by rail or water. Water communicaton was prevented, for the time, by ice, and it was insisted that defendants should have incurred, what, at the time, would have been an extraordinary expense, and shipped the oil by rail. The court held, under the above rule, that the company was not bound to. ship by rail, as the court below liad ruled. This ruling was- correct, but that, case was not the same as the one now under consideration. The question here is, whether, when, the article shipped and agreed to be carried, was suddenly exposed to an extraordinary peril, it was not reasonable diligence to remove it from that peril by transferring it to the convenient road above overflow, not for the purpose of .transporting it to its destination by that route, but for its preservation from damage or destruction while in its possession. We think the sound rule is, that if, by the use of such active diligence, and of such means as would be suggested to, and within the knowledge and capacity of well informed and competent business men in sucb position, the article *289 could have been saved, it was their duty to have used such means. If the transfer to the other track was fairly within their power, in the use of such diligence, consistent with the surrounding circumstances and duties, and the same could have been obtained without trespassing on the rights of the other company, but by their consent, then it would have been the duty of the defendant to' have so moved the car, and thus saved it from damage.
This would have been a question of fact for the jury, under the instruction of the court. In this view of 1he case, we cannot say the facts shown were not competent to go to the jury on the question whether the defendant had used reasonable efforts, under circumstances, to preserve the goods from injury. This must be so, unless we hold that the defendant could not be required to remove the goods from their own track or cars temporarily, but might keep them there, although threatened with destruction, when such removal could, by reasonable efforts and energy, have been effected, and that this simply because, by their contract, they were only bound to transport by the usual route to the place of destination. We do not think such a rale can be fairly sustained, either on sound principle or ■authority. .See Redfield on Carriers, secs. 237, 304, 358.
In reference to several points of objection made in argument, and authorities referred to, we need but say, that any delay in the transportation of goods would clearly, on principle and authority, be excused and not create liability on the part of the company, when such delay was the result of providential causes, such as the freezing of the river, in the case from Pennsylvania, or loss of the company’s bridges, in case referred to by Mr. Redfield, secs. 304, 305. So the freshet in- this case, and the falling of a rock on the road from Lookout Mountain, would have excused any delay occasioned by these causes. But then it was the duty of the company, as soon as might be after removal of the *290 obstructions, to proceed in performance of tbeir contract. This action is brought for failure to cany safely and deliver at all, as by the terms of their receipt they were bound to do. See Hadley v. Clarke, 8 Term Reports, 259; cited, Redfield on Gamers, note 1, to p. 221. The temporary obstruction does not avoid the execution of the contract, but only supends it. Angelí on Carriers, sec. 289.
Without examining in detail all the questions suggested in argument, after a critical examination of the charge of his honor, we think it laid down the rules of law applicable to the questions involved, correctly. As to whether the evidence sustains the verdict, we have but to say that the question was fairly submitted to the jury on the facts, and we see no cause to disturb it. [On this question see note 2, under sec. 6348 of the Code.]